**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ILIFE TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 3:13-cv-04780 |
| v. | § | |
| | § | **Jury Trial Demanded** |
| ALIPHCOM d/b/a JAWBONE, | § | |
| | § | |
| Defendant. | § | |

---

**DEFENDANT ALIPHCOM'S MOTION TO TRANSFER VENUE TO THE UNITED
STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

Defendant AliphCom d/b/a Jawbone ("AliphCom") moves to transfer venue to the United States District Court for the Northern District of California, San Francisco Division, pursuant to 28 U.S.C. § 1404(a).  The contentions of law, arguments, authorities, and evidence in support of AliphCom's Motion are provided in the accompanying Brief in Support and Appendix.

# Table of Contents

Page

I.     INTRODUCTION ......................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................ 3

    A.    iLife Has No Cognizable Connection to this District ............................ 3

    B.    AliphCom Has No Relevant Connection to this District ....................... 5

    C.    Virtually All Presently-Known Potential Third-Party Witnesses Reside Outside of the Northern District of Texas ............................................. 6

III.    LEGAL STANDARD .................................................................................. 8

IV.    ARGUMENT ............................................................................................. 10

    A.    iLife Could Have Sued AliphCom in the Northern District of California .......... 10

    B.    Convenience and the Interests of Justice Warrant Transfer to the Northern District of California ........................................................... 11

        1.    The Private Interest Factors Favor Transfer ............................ 11

            a.    Sources of Proof Are Much More Accessible from the Northern District of California....................................... 11

            b.    The Availability of Compulsory Process Favors Transfer to the Northern District of California................................. 14

            c.    The Cost of Attendance for Willing Witnesses Favors Transfer to the Northern District of California ........................... 16

            d.    Practical Issues Encouraging Expedient Adjudication Favor Transfer ....................................................................... 20

        2.    The Public Interest Factors Favor Transfer ............................. 22

            a.    The Northern District of California Has a Greater Interest than this District in the Outcome of this Case ........................... 22

            b.    The Remaining Public Interest Factors Are Neutral................... 25

V.    CONCLUSION .......................................................................................... 25

## Table of Authorities

Page

**Cases**

*AT & T Intellectual Property I, L.P. v. Airbiquity Inc.*
   Civil Action No. 3:08-cv-1637-M, 2009 WL 774350 (N.D. Tex. Mar. 24, 2009) ................... 23

*GeoTag, Inc. v. Starbucks Corp.*
   No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ............................... 21

*Hertz Corp. v. Friend*
   559 U.S. 77 (2010) ......................................................................................... 9

*iLife Technologies, Inc. v. Pioneer Security Servs., Inc.*
   No. 12-cv-5162 (N.D. Tex.) ............................................................................. 3

*iLife Techs., Inc. v. ActiveCare, Inc.*
   No. 12-cv-5161 (N.D. Tex.) ............................................................................. 3

*iLife Techs., Inc. v. Body Media Inc.*
   No. 13-cv-4776 (N.D. Tex. Dec. 6, 2013) ......................................................... 3

*iLife Techs., Inc. v. Fitbit, Inc.*
   No. 13-cv-4778 (N.D. Tex. Dec. 6, 2013) ......................................................... 3

*iLife Techs., Inc. v. Lifeline Sys.*
   No. 12-cv-5157 (N.D. Tex.) ............................................................................. 3

*iLife Techs., Inc. v. Nintendo of Am., Inc.*
   No. 13-cv-4987 (N.D. Tex. Dec. 23, 2013) ...................................................... 3

*iLife Techs., Inc. v. OnAsset Intelligence, Inc.*
   No. 12-cv-5155 (N.D. Tex.) ............................................................................. 3

*iLife Techs., Inc. v. Under Armour, Inc.*
   No. 13-cv-4781 (N.D. Tex. Dec. 6, 2013) .................................................... 3, 22

*In re Acer Am. Corp.*
   626 F.3d 1252 (Fed. Cir. 2010) ..................................................................... 13

*In re EMC Corp.*
   677 F.3d 1351 (Fed. Cir. 2012) ....................................................................... 8

*In re Genentech*
   566 F.3d 1338 (Fed. Cir. 2009) ................................................... 9, 11, 13, 17

*In re Hoffman-La Roche Inc.*
   587 F.3d 1333 (Fed. Cir. 2009) ....................................................................... 9

*In re Microsoft Corp.*
   630 F.3d 1361 (Fed. Cir. 2011) ....................................................... 13, 20, 24

*In re Nintendo Co., Ltd.*
   598 F.3d 1194 (Fed. Cir. 2009) ................................................................. 9, 22

*In re TS Tech USA Corp.*
   551 F.3d 1315 (Fed. Cir. 2008) ............................................................. 8, 9, 23

## Table of Authorities
(continued)

Page

*In re Volkswagen AG* (*Volkswagen I*)
   371 F.3d 201 (5th Cir. 2004) ........................................................................ 8, 16, 19

*In re Volkswagen of Am.* (*Volkswagen II*),
   545 F.3d 304 (5th Cir. 2008) (*en banc*) .............................. 8, 9, 10, 11, 14, 16, 22, 23

*In re Zimmer Holdings, Inc.*
   609 F.3d 1378 (Fed. Cir. 2010) .............................................................. 9, 20, 21, 24

*LT Tech, LLC v. FrontRange Solutions USA Inc.*
   No. 3:13-cv-1901-M, 2013 WL 6181983 (N.D. Tex. Nov. 26, 2013) ............ 11, 14, 21, 23, 25

*Massman v. iLife Solutions, Inc.*,
   No. 3:04-cv-00588 (N.D. Tex. Mar. 19, 2004) ........................................................................ 1

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*
   No. Civ. A. 3:02-CV-2538, 2003 WL 21251684 (N.D. Tex. May 23, 2003) ................... 23, 24

*Optimum Power Solutions LLC v. Apple, Inc.*
   794 F. Supp. 2d 696 (E.D. Tex. 2011) ........................................................................ 25

*Paragon Indus., L.P. v. Denver Glass Mach., Inc.*
   Civil Action No. 3-07CV2183-M, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008) ............ 8, 23

*Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*
   Civil Action No. 2:10-109-TJW, 2011 U.S. Dist. LEXIS 15408 (E.D. Tex. Jan. 12,
   2011) ........................................................................ 16

**Statutes**

28 U.S.C. § 1331 ........................................................................ 10

28 U.S.C. § 1391 ........................................................................ 10

28 U.S.C. § 1400(b) ........................................................................ 10

28 U.S.C. § 1404(a) ........................................................................ 1, 8

**Rules**

Fed. R. Civ. P. 45(d)(3)(A)(ii) ........................................................................ 14, 16

## BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

Defendant AliphCom d/b/a Jawbone ("AliphCom") moves to transfer venue to the United States District Court for the Northern District of California, San Francisco Division, pursuant to 28 U.S.C. § 1404(a).

## I.   INTRODUCTION

The parties and third parties in this case have significant contacts with the Northern District of California.  But there are few, if any, contacts with this District.  A summary of the parties' contacts is set out below:

AliphCom, Defendant:

- AliphCom is headquartered in San Francisco, California, which is in the Northern District of California, San Francisco Division.

- AliphCom's executives reside and work in the Northern District of California.

- AliphCom's product development team is directed out of AliphCom's headquarters in San Francisco, California.

- AliphCom is incorporated in California.

- The vast majority of AliphCom's accused products and services were researched, designed, developed, and tested within the Northern District of California.

- AliphCom has no officers or employees in the Northern District of Texas.

iLife Technologies, Inc., Plaintiff:

- iLife Technologies, Inc. ("iLife") is a Texas corporation formed in October 2012, just two months before iLife launched its litigation campaign on the asserted patents.  iLife purports to have its principal place of business "in this District."

- iLife Solutions, Inc. ("iLife Solutions")—iLife's parent company and the predecessor-in-interest of the asserted patents—is a Delaware corporation with offices in Bethesda, Maryland.  iLife Solutions previously had its principal place of business in New York, but not in Texas.[1]

---

[1] *See* Notice of Removal at ¶ 5, *Massman v. iLife Solutions, Inc.*, No. 3:04-cv-00588 (N.D. Tex. Mar. 19, 2004), ECF No. 1 ("iLife [Solutions] is incorporated in Delaware and has its principal place of business in New York.  iLife [Solutions] is **not** a citizen of Texas.") (emphasis added).

- Michael L. Lehrman—one of iLife's directors, iLife's CEO, and a co-inventor of all six asserted patents—resides in the Washington, D.C. area.

- iLife's remaining directors, Michael Hotchkiss and William J. Armfield IV, also reside in the Mid-Atlantic region (in Potomac, Maryland and Greensboro, North Carolina, respectively).

- Although iLife claims its principal place of business is in this District, AliphCom has been unable to locate evidence of iLife's employees in this District.

Other Third Parties:

- Michael E. Halleck—the only other inventor besides Mr. Lehrman named on all six asserted patents—is noted as residing in Colorado.

- Alan R. Owens—a co-inventor named on several of the asserted patents—is noted as residing in Colorado.

- Edward L. Massman—a co-inventor named on some of the asserted patents— appears to reside in Dallas, Texas.

- At least three third-party witnesses knowledgeable about relevant prior art reside in (or within the absolute subpoena power of) the Northern District of California. And at least three more potential prior art third-party witnesses are located elsewhere in California and thus may be compelled to attend trial in the Northern District of California.

- At least two third-party witnesses knowledgeable about the underlying technology used in the accused products work or reside in the Northern District of California.

Overall, a substantial majority of these party and third-party contacts are within the Northern District of California or within its subpoena power.  In contrast, very few potential witnesses, if any, are within the Northern District of Texas.  Furthermore, as described below, iLife's contacts in this District are immaterial to the transfer analysis because they appear to have been made in anticipation of litigation.  On these grounds, AliphCom moves the Court to transfer this case to the Northern District of California, San Francisco Division, pursuant to 28 U.S.C. § 1404(a).

## II.   FACTUAL BACKGROUND

### A.   iLife Has No Cognizable Connection to this District

Plaintiff iLife Technologies, Inc. ("iLife" or "Plaintiff") filed this patent infringement suit alleging that AliphCom infringes U.S. Patent Nos. 6,307,481, 6,703,939, 6,864,796, 7,095,331, 7,145,461, and 7,479,890 (collectively, the "Patents-in-Suit").  (*See* Pl.'s First Am. Compl., ECF No. 10.)  But iLife's claims against AliphCom have no meaningful connection to this District.

iLife was formed as a Texas corporation on October 9, 2012 by a transactional partner at the law firm that represents iLife in this action.  (*See* Declaration of Anthony M. Stiegler in Support of AliphCom's Motion to Transfer ("Stiegler Decl."), APP. 1–2, ¶¶ 2–4 (citing Exs. 1–2, APP. 12–26).)  On the very same day iLife was formed, its Delaware parent, iLife Solutions, assigned all six of the Patents-in-Suit to iLife.  (*Id.* at APP. 2, ¶¶ 5–6 (citing Ex. 3, APP. 29).)

Just two months after it was formed, on December 18, 2012, iLife launched an initial litigation campaign on the Patents-in-Suit against several defendants in four separate actions. *See iLife Techs., Inc. v. OnAsset Intelligence, Inc.*, No. 12-cv-5155 (N.D. Tex.); *iLife Techs., Inc. v. Lifeline Sys.*, No. 12-cv-5157 (N.D. Tex.); *iLife Techs., Inc. v. ActiveCare, Inc.*, No. 12-cv-5161 (N.D. Tex.); *iLife Technologies, Inc. v. Pioneer Security Servs., Inc.*, No. 12-cv-5162 (N.D. Tex.).  iLife settled each of these first-wave actions in the pleadings stage well before the Court addressed claim construction or any other issue specific to the Patents-in-Suit.  (*See* Stiegler Decl., APP. 2–3, ¶¶ 7–10 (citing Exs. 4–7, APP. 30–87).)  As these first-wave cases began to wind down, iLife launched a second wave of suits against five defendants, including this action against AliphCom.  *See iLife Techs., Inc. v. Body Media Inc.*, No. 13-cv-4776 (N.D. Tex. Dec. 6, 2013); *iLife Techs., Inc. v. Fitbit, Inc.*, No. 13-cv-4778 (N.D. Tex. Dec. 6, 2013); *iLife Techs., Inc. v. Under Armour, Inc.*, No. 13-cv-4781 (N.D. Tex. Dec. 6, 2013); *iLife Techs., Inc. v. Nintendo of Am., Inc.*, No. 13-cv-4987 (N.D. Tex. Dec. 23, 2013).

Other than litigating these patent suits, however, there is no evidence that iLife does any business in this District.  Indeed, the available evidence about iLife's Northern District of Texas presence *confirms* that its activities in this District are limited to asserting the Patents-in-Suit.  For example, although iLife's website lists a Dallas telephone number, that phone number is registered to a "Samuel Dunwoody"—which appears to be the same Mr. Dunwoody that represents iLife in this case—rather than any sort of research, sales, or other facility engaged in activities other than patent enforcement.  (*See* Stiegler Decl., APP. 3–4, ¶¶ 11–13 (citing Exs. 8–12, APP. 88–95).)  Similarly, iLife's listing of a Bedford, Texas address on the "Contact Us" page of its website appears to be an artifact of litigation.  Specifically, iLife's use of this new address coincides with the start of its litigation campaign because archived versions of iLife's website show a Bethesda, Maryland address only a few months before its litigation campaign.  (*See id.* at APP. 3–4, ¶¶ 11–12, 14 (citing Exs. 8–9, 13, APP. 88–91, 111–13).)  Regardless, there is no indication that iLife has any employees who live or work in this District.[2]

Nor do iLife's officers and directors reside in this District.  Michael L. Lehrman—one of iLife's directors, iLife's CEO, and a co-inventor of all six of the Patents-in-Suit—resides in the Washington, D.C. area.  (*See id.* at APP. 1–2, 4–5, ¶¶ 2, 15–21 (citing Exs. 1, 14–20, APP. 17, 114–29).)  iLife's two other directors, Michael Hotchkiss and William J. Armfield IV, also reside in the Mid-Atlantic region (in Potomac, Maryland and Greensboro, North Carolina, respectively).  (*See id.* at 1–2, ¶ 2 (citing Ex. 1, APP. 17).)

---

[2] Indeed, there are substantial questions about whether iLife maintains any offices in this District.  Curiously, while iLife's First Amended Complaint provides a full street address for AliphCom's principal place of business, it obliquely states that iLife's "principal place of business" is "in this Judicial District."  (Pl.'s First Am. Compl. ¶ 1, ECF No. 10.)  To AliphCom's knowledge, iLife does not have any witnesses who work at iLife's Bedford address.  (*See* Stiegler Decl., APP. 9, ¶ 35.)

Because iLife appears to conduct no business in the Northern District of Texas other than litigating the Patents-in-Suit, it is unlikely that any significant discoverable information will come from any iLife facility in this District. This is particularly true since neither iLife Solutions (Plaintiff's parent company and the previous owner of the Patents-in-Suit) nor any of Plaintiff's principals reside in this District.

**B.      AliphCom Has No Relevant Connection to this District**

AliphCom is a California corporation headquartered in San Francisco, California, which is in the San Francisco Division of the Northern District of California. (Declaration of Michael Luna in Support of AliphCom's Motion to Transfer ("Luna Decl."), APP. 229, ¶ 2.) As a result, numerous foreseeable sources of evidence for this action are located in the Northern District of California. For example, the vast majority of AliphCom's accused products and services were researched, designed, developed, and tested in the Northern District of California. (*Id.* at APP. 229, 231, ¶¶ 2–3, 7.) In addition, at least the following potential AliphCom witnesses in this action work at AliphCom's headquarters in San Francisco and reside in the Northern District of California:

- **Michael Luna**, AliphCom's Chief Technology Officer;

- **Craig Cuffie**, AliphCom's Vice President of Operations;

- **Travis Bogard**, AliphCom's Vice President of Product Management and Strategy;

- **Jeremiah Robison**, AliphCom's Vice President of Software; and

- **David Merrenbach**, AliphCom's Chief Financial Officer. (*Id.* at APP. 230, ¶ 4.)

In contrast, it is highly unlikely that any of AliphCom's potential witnesses or sources of evidence are located in the Northern District of Texas. None of the accused products or services were developed or manufactured in this District. (*Id.* at APP. 232–33, ¶ 16.) AliphCom does not

currently maintain an office in this District.  (*Id.*)  Similarly, none of AliphCom's authorized

North American distributors are located in this District.  (*Id.*)

### C.   Virtually All Presently-Known Potential Third-Party Witnesses Reside Outside of the Northern District of Texas

A significant amount of the anticipated evidence and testimony in this action will come

from (1) individuals with knowledge of the underlying technology of the accused products; (2)

individuals with knowledge of relevant prior art; and (3) individuals named as inventors on the

Patents-in-Suit.

AliphCom is aware of at least two third-party witnesses knowledgeable about certain

underlying technology of the accused products:

- **Philippe Kahn** is President, CEO, Chairman, and Co-Founder of Fullpower Technologies, Inc. ("Fullpower"), which is a licensor of certain technology used in AliphCom's accused products.  (Luna Decl., APP. 232, ¶¶ 11, 14 (citing Ex. C, APP. 239).)  Fullpower's headquarters are located in Santa Cruz, California, which is in the Northern District of California.  (*See id.* at APP. 232, ¶¶ 12–13 (citing Exs. A–B, APP. 234–37).)  Mr. Kahn appears to live or work in the Northern District of California.  (*See id.* at APP. 232, ¶¶ 12–14 (citing Exs. A–C, APP. 234–40).)

- **Arthur Kinsolving** is Vice President of Technology and IP and Co-Founder of Fullpower, which is headquartered in the Northern District of California.  (Luna Decl., APP. 232, ¶¶ 12–14 (citing Exs. A–C, APP. 234–41).)  Mr. Kinsolving appears to live or work in the Northern District of California.  (*See id.*)

Numerous individuals with knowledge of relevant prior art systems and publications,

along with their documentary evidence, are located in the Northern District of California or

elsewhere in California.  Specifically, AliphCom is aware of at least six individuals

knowledgeable about prior art who appear to live or work in California:

- **Christopher Verplaetse**, while at the MIT Media Laboratory, authored an article on intelligent motion-sensing devices that addresses much of the subject matter covered by the Patents-in-Suit.  (Stiegler Decl., APP. 5, ¶ 23 (citing Ex. 22, APP. 134–46).)  Mr. Verplaetse is now Vice President, Devices at BASIS Science, Inc., which is headquartered in San Francisco in the Northern District of California.

(*Id.* at APP. 5–6, ¶ 24 (citing Ex. 23, APP. 147–52).)  Mr. Verplaetse appears to reside within the Northern District of California.  (*Id.* (citing Ex. 24, APP. 154).)

- **Tom J. Cowley** is a co-inventor of U.S. Pat. No. 5,751,214 (filed December 13, 1995), which was cited during prosecution of at least two of the Patents-in-Suit. (Stiegler Decl., APP. 4, 6, ¶¶ 16, 18, 25 (citing Exs. 15, 17, 25, APP. 117, 122, 156).)  Mr. Cowley appears to live or work in the Northern District of California. (*Id.* at APP. 5–6, ¶¶ 22, 26 (citing Exs. 21, 25–26, APP. 133, 155–58).)

- **Larry O. Bower** is a co-inventor of U.S. Pat. No. 5,751,214 (filed December 13, 1995), which was cited during prosecution of at least two of the Patents-in-Suit. (Stiegler Decl., APP. 4, 6, ¶¶ 16, 18, 25 (citing Exs. 15, 17, 25, APP. 117, 122, 156).)  Mr. Bower appears to live or work in the Northern District of California. (*Id.* at APP. 5–7, ¶¶ 22, 27 (citing Exs. 21, 25, 27, APP. 133, 156, 161).)

- **Ramzi Bader** is the inventor of U.S. Patent No. 4,418,337 (filed August 3, 1981), which was cited during prosecution of at least one of the Patents-in-Suit.  (Stiegler Decl., APP. 5, 7, ¶¶ 21, 28 (citing Exs. 20, 28, APP. 129, 164).)  Mr. Bader appears to reside in the Greater Los Angeles Area.  (*Id.* at APP. 7, ¶ 29 (citing Exs. 28–29, APP. 163–67).)

- **Henry A. Affeldt** is a co-inventor of CAN Patent No. 1,296,426 (filed February 5, 1987), which is directed to methods and devices for measuring different forms of acceleration.  (Stiegler Decl., APP. 7, ¶ 30 (citing Ex. 30, APP. 168–80).)  Mr. Affeldt appears to reside in the Greater Los Angeles Area.  (*Id.* at APP. 7–8, ¶ 31 (citing Exs. 31–33, APP. 181–89).)

- **Siamak Siyami** is a co-inventor of CAN Patent No. 1,296,426 (filed February 5, 1987), which is directed to methods and devices for measuring different forms of acceleration.  (Stiegler Decl., APP. 7, ¶ 30 (citing Ex. 30, APP. 168–80).)  Mr. Siyami appears to reside in Orange County, California.  (*Id.* at APP. 8–9, ¶ 32 (citing Exs. 31–32, 34, APP. 181–84, 194–97).)

With respect to the inventors of the Patents-in-Suit, the two named co-inventors common to all of the Patents-in-Suit appear to reside outside of this District: Michael L. Lehrman appears to live in the Washington, D.C. area, and Michael E. Halleck appears to live in Colorado.  (*See* Stiegler Decl., APP. 4–5, ¶¶ 16–21 (citing Exs. 15–20, APP. 116–29).)  A third co-inventor named on several of the Patents-in-Suit, Alan R. Owens, also appears to reside in Colorado.  (*See id.*)  Edward Massman, a co-inventor named on some of the Patents-in-Suit, appears to live in Dallas, Texas.  (*See id.*)

### III.   LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer, for the convenience of the parties and witnesses and in the interest of justice, any civil action to any other district or division where the action might have been brought.  28 U.S.C. § 1404(a).  Fifth Circuit law governs this Court's determination of whether to transfer because the Federal Circuit applies the law of the appropriate regional circuit to venue issues in patent cases.  *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012).

The Fifth Circuit has explained that the threshold inquiry under § 1404(a) "is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004).  Once this threshold inquiry is satisfied, courts "must consider a number of private and public interest factors when determining whether to grant a motion to transfer."  *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, Civil Action No. 3-07CV2183-M, 2008 WL 3890495, at *1 (N.D. Tex. Aug. 22, 2008).  "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *In re Volkswagen of Am.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) (internal citations and quotations omitted).  "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."  *Id.* (internal citations and quotations omitted).

"Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed.

Cir. 2008) (citing *Volkswagen II*, 545 F.3d at 314 n. 10).  In fact, courts should grant a motion to transfer without regard to the plaintiff's choice of venue when the defendant shows "good cause."  *See Volkswagen II*, 545 F.3d at 315.  Good cause exists when the defendant shows "that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff."  *In re TS Tech*, 551 F.3d at 1319 (quoting *Volkswagen II*, 545 F.3d at 315).

Furthermore, courts must ensure that the purposes of venue laws are not frustrated by a party's attempts at manipulation.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010).  As a result, courts must disregard a plaintiff's contacts with its chosen forum if those contacts "appear[] to be recent, ephemeral, and an artifact of litigation."  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (applying Fifth Circuit law).  In fact, the Federal Circuit has overwhelmingly concluded that venue transfer motions should be granted when a plaintiff relies on artificial or tenuous connections to a forum to manipulate venue but the majority of relevant documents and witnesses are located outside the plaintiff's chosen venue.  *E.g.*, *In re TS Tech*, 551 F.3d at 1320–21 (granting a transfer from the Eastern District of Texas when there was "no relevant connection between the actions giving rise to [the] case and the Eastern District of Texas" and a substantial majority of witnesses and documentary evidence were located outside the Eastern District of Texas); *In re Genentech*, 566 F.3d 1338, 1348 (Fed. Cir. 2009) (granting a transfer from the Eastern District of Texas to the Northern District of California despite the centrality of the plaintiffs' chosen venue to the parties and witnesses because a "substantial number" of witnesses and documents relating to the accused products were located in or near the Northern District of California); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–38 (Fed. Cir. 2009) (granting a transfer from the Eastern District of Texas because there was "a stark contrast in relevance, convenience, and fairness between the two venues" based on the tenuous connection with the Texas venue and the substantial amount of witnesses and documents located

in or near the transferee venue); *In re Nintendo Co., Ltd.*, 598 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

IV.    ARGUMENT

Under the legal standard described above, this action warrants transfer to the Northern District of California because this case could have been brought in the Northern District of California and transfer would facilitate both the convenience of parties and witnesses and the interests of justice.

A.    **iLife Could Have Sued AliphCom in the Northern District of California**

Here, the threshold venue inquiry is satisfied: iLife could have brought its claims against AliphCom in the Northern District of California because subject matter jurisdiction, personal jurisdiction, and venue are all proper in that district.   First, subject matter jurisdiction exists because iLife asserts its claims under federal patent law.   (*See* Pl.'s First Am. Compl., ECF No. 10.)   All federal courts, including the Northern District of California, have federal question jurisdiction over such claims.   28 U.S.C. § 1331.   Second, AliphCom is subject to personal jurisdiction in the Northern District of California because it maintains its headquarters in the Northern District of California.   (*See* Luna Decl., APP. 229, ¶ 2.)   Third, in a patent infringement action, proper venue includes "where the defendant resides."   28 U.S.C. § 1400(b).   Because it is subject to personal jurisdiction in the Northern District of California, AliphCom is deemed to reside in that district.   28 U.S.C. § 1391.   Thus, venue is proper in the Northern District of California.

Since the threshold inquiry under § 1404(a) is satisfied, this Court can evaluate the merits of this motion to transfer venue by considering the private and public interest factors relating to

the convenience of parties and witnesses and the interests of justice.  *E.g.*, *Volkswagen II*, 545 F.3d at 312, 315.

### B.     Convenience and the Interests of Justice Warrant Transfer to the Northern District of California

Under the discretionary authority provided by § 1404(a), this Court should transfer this action to the Northern District of California because the totality of the private and public interest factors weighs heavily in favor of transfer to the Northern District of California.

### 1.     The Private Interest Factors Favor Transfer

The four private interest factors, which relate principally to the accessibility of evidence, overwhelmingly favor transfer because the majority of evidence that AliphCom will provide in response to discovery or for use at trial will come from within the Northern District of California.   Furthermore, other relevant witnesses and documents are located outside the Northern District of Texas and are equally accessible from the Northern District of California. As a result, the transfer of this action to the Northern District of California will reduce the costs and burdens of this litigation.

### a.     Sources of Proof Are Much More Accessible from the Northern District of California

Despite advances in copying and electronic data transfer technologies, the physical location of documents and evidence remains a "meaningful factor."  *Volkswagen II*, 545 F.3d at 316; *see also In re Genentech*, 566 F.3d at 1345–46 (applying Fifth Circuit law).  "[T]his factor is particularly significant in the context of patent infringement cases because, in general, the majority of relevant evidence in such cases comes from the accused infringer."  *LT Tech, LLC v. FrontRange Solutions USA Inc.*, No. 3:13-cv-1901-M, 2013 WL 6181983, at *2 (N.D. Tex. Nov. 26, 2013) (citing *In re Genentech*, 566 F.3d at 1345).  As a result, "the location of the alleged infringer's documents bears heavily on [a court's] determinations with respect to this factor" and

11

weighs in favor of transfer to that location.  *Id.* at *2–3; *see also In re Genentech*, 566 F.3d at 1345.

The vast majority of AliphCom's physical and documentary evidence related to the claims and defenses in this litigation is located at its headquarters in San Francisco or at its engineering office in Sunnyvale, California, both of which are in the Northern District of California.  (Luna Decl., APP. 231, ¶ 8.)  Any other such evidence is located at AliphCom's engineering office in Seattle, Washington.  (*Id.*)  The vast majority of AliphCom's accused products and services were researched, designed, developed, and tested within the Northern District of California.  (*Id.* at APP. 229, 231, ¶¶ 2–3, 7.)  All product prototypes and master versions of software for the accused products are kept at AliphCom's headquarters in San Francisco or AliphCom's engineering offices in Sunnyvale, California and Seattle, Washington. (*Id.*)  The same is true for AliphCom's physical files and servers.  (*Id.* at APP. 231, ¶ 8.)  The vast majority of AliphCom's business documents and records relating to the research, design, development, marketing strategy, pricing, and product revenue for AliphCom's accused products and services are located in San Francisco—any other such records are located in Sunnyvale or Seattle.  (*Id.*)  All of AliphCom's financial and legal information is kept at its headquarters in San Francisco, California.  (*Id.*)  Furthermore, key documentary evidence regarding prior art developed by individuals in the Northern District of California (and elsewhere in California) is likely located in or near the Northern District of California.  (*Id.* at APP. 232, ¶ 10; Stiegler Decl., APP. 9, ¶ 33.)

Similarly, most of the parties' foreseeable witnesses reside outside of the Northern District of Texas.  The vast majority of AliphCom's personnel responsible for the research, design, development, and sale of the accused products and services reside and work in or near the Northern District of California.  (Luna Decl., APP. 230–31, ¶ 5.)  All of AliphCom's

executives and officers work at AliphCom's headquarters in San Francisco and reside in the Northern District of California.  (*Id.* at APP. 230, ¶ 4.)  All marketing and sales decisions related to the accused products and services were made at AliphCom's headquarters in San Francisco by AliphCom's executives and employees.  (*Id.* at APP. 231, ¶ 6.)  Most of AliphCom's third-party witnesses also work and reside in or near the Northern District of California.  (*See id.* at APP. 232, ¶¶ 12–15 (citing Exs. A–C, APP. 234–41); *see also* Stiegler Decl., APP. 5–7, ¶¶ 22, 24, 26–27 (citing Exs. 21, 23, 25–27, APP. 133, 147–52, 155–61).)  In addition, the named inventors common to all of the Patents-in-Suit are noted as residing outside the Northern District of Texas.  (*See* Stiegler Decl., APP. 4–5, ¶¶ 16–21 (citing Exs. 15–20, APP. 116–29).)  Similarly, even the CEO and directors of iLife appear to reside outside the Northern District of Texas.  (*See id.* at APP. 1–2, 4, ¶¶ 2, 15 (citing Exs. 1, 14, APP. 17, 115).)

AliphCom is not aware of any relevant evidence located in this District within the possession of iLife.  (*Id.* at APP. 9, ¶ 34.)  Regardless, it is highly unlikely that iLife has any evidence in this District relevant to the transfer analysis because iLife was formed just two months before it launched its litigation campaign on the Patents-in-Suit.  *See In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (giving no weight in the venue analysis to "the transfer of documents to a company's offices in anticipation of litigation").  Even if iLife points to some discernible sources of proof located in this District, this factor still favors transfer because the majority of evidence relevant to this litigation (as described above) is located within the Northern District of California.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (sources of proof factor favored transfer when it appeared that a significant portion of the evidence would be located in the proposed transferee district).

Because the majority of the foreseeable evidence is located in or near the Northern District of California (or more easily accessible there), this first private interest factor

overwhelmingly favors transfer to the Northern District of California.  *See In re Genentech*, 566 F.3d at 1345–46 ("Keeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on the [defendants] to transport documents that would not be incurred if the case were to proceed in the Northern District of California.").

> ### b.     The Availability of Compulsory Process Favors Transfer to the Northern District of California

This second private interest factor favors transfer when more witnesses[3] reside within the subpoena power of the transferee venue than the current venue.  *See LT Tech*, 2013 WL 6181983, at *3.  In fact, preferred venues enjoy "absolute subpoena power for both depositions and trial."  *Volkswagen II*, 545 F.3d at 316.  Courts "must quash or modify" a subpoena that compels a person to travel more than 100 miles (or to another state) to testify.  Fed. R. Civ. P. 45(d)(3)(A)(ii).  Similarly, courts cannot compel a third-party witness to attend a deposition more than 100 miles from the person's residence.  *Id.*

Most of the foreseeable witnesses in this case are located outside of this Court's absolute subpoena power because they work and reside more than 100 miles from this Court or outside of Texas.  The vast majority of AliphCom's personnel responsible for the research, design, development, and sale of the accused products and services reside and work in or near the Northern District of California.  (Luna Decl., APP. 230–31, ¶ 5.)  All of AliphCom's executives and officers, including at least five officers with knowledge of the research, design, development, production, marketing, or sales of the accused products and services, work at AliphCom's headquarters in San Francisco and reside in the Northern District of California.  (*Id.* at APP. 230, ¶ 4.)  All marketing and sales decisions related to the accused products and services

---

[3] The recent amendment of Federal Rule of Civil Procedure 45 diminished the importance of the distinction between non-party and party witnesses when determining the extent of a court's subpoena powers.  For example, courts can no longer compel a party or a party's officers to travel more than 100 miles (or to another state) to testify at trial.  Fed. R. Civ. P. 45(d)(3)(A)(ii).

were made at AliphCom's headquarters in San Francisco by AliphCom's executives and employees.  (*Id.* at APP. 231, ¶ 6.)  All of these AliphCom executives and employees are subject to the Northern District of California's absolute subpoena power.

Similarly, unlike this District, the Northern District of California has absolute subpoena power over the following third-party witnesses who work or reside in or near the Northern District of California:

- **Christopher Verplaetse**, the author of a potentially invalidating prior art reference who may testify about potentially invalidating prior art and who appears to live or work in the San Francisco Bay Area;

- **Tom J. Cowley**, a co-inventor of U.S. Pat. No. 5,751,214 (which was cited during prosecution of at least two of the Patents-in-Suit) who may testify about potentially invalidating prior art and who appears to live or work in the Northern District of California;

- **Larry O. Bower**, a co-inventor of U.S. Pat. No. 5,751,214 (which was cited during prosecution of at least two of the Patents-in-Suit) who may testify about potentially invalidating prior art and who appears to live or work in the Northern District of California;

- **Philippe Kahn**, the President, CEO, Chairman, and Co-Founder of Fullpower, who may testify about some of the underlying technology used in AliphCom's accused products and who appears to live or work in the Northern District of California; and

- **Arthur Kinsolving**, the Vice President of Technology and IP and Co-Founder of Fullpower, who may testify about some of the underlying technology used in AliphCom's accused products and who appears to live or work in the Northern District of California.  (Luna Decl., APP. 232, ¶¶ 11–15 (citing Exs. A–C, APP. 234–41); Stiegler Decl., APP. 5–7, ¶¶ 22–27 (citing, Exs. 21–27, APP. 133–62).)

Additionally, unlike this District, the Northern District of California can compel the trial testimony of at least three third-party witnesses located in Southern California:

- **Ramzi Bader**, the inventor of U.S. Patent No. 4,418,337 (which was cited during prosecution of at least one of the Patents-in-Suit) who appears to reside in the Greater Los Angeles Area;

- **Henry A. Affeldt**, a co-inventor of CAN Patent No. 1,296,426 (potential prior art) who appears to reside in the Greater Los Angeles Area; and

- **Siamak Siyami**, a co-inventor of CAN Patent No. 1,296,426 (potential prior art) who appears to reside in Orange County, California.  (Stiegler Decl., APP. 5, 7–9, ¶¶ 21, 28–32 (citing Exs. 20, 28–34, APP. 129, 163–97).)

Because it can exercise its subpoena power over a substantial majority of the foreseeable party and third-party witnesses in this action, the Northern District of California is a clearly more convenient venue for the parties to present relevant testimonial evidence at trial.  *See* Fed. R. Civ. P. 45(d)(3)(A)(ii).  As a result, this second private interest factor overwhelmingly favors transfer to the Northern District of California.

### c. The Cost of Attendance for Willing Witnesses Favors Transfer to the Northern District of California

The Fifth Circuit has established a 100-mile rule to evaluate the inconvenience and costs incurred by witnesses attending trial: "[w]hen the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204–05.  This rule exists because "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *Id.* at 205.  In addition to monetary costs, witnesses also suffer "the personal costs associated with being away from work, family, and community."  *Volkswagen II*, 545 F.3d at 317.  As a result, this factor favors transfer when more witnesses would be inconvenienced by traveling to the original venue than to the transferee venue.  *See Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, Civil Action No. 2:10-109-TJW, 2011 U.S. Dist. LEXIS 15408, at *16 (E.D. Tex. Jan. 12, 2011) (finding this factor favored transfer when most witnesses would have to travel to the plaintiff's chosen venue).  But when a particular

witness "will be required to travel a significant distance no matter where they testify," then that witness receives less weight in the 100-mile rule analysis. *In re Genentech*, 566 F.3d at 1344.

AliphCom's foreseeable party witnesses include the following individuals, each of whom work at AliphCom's headquarters in San Francisco, California and reside in the Northern District of California:

- **Michael Luna**, AliphCom's Chief Technology Officer, who may testify about the technology and operation of the accused products and services, including testimony about the underlying algorithms, sensors, and hardware used in the accused products;

- **Craig Cuffie**, AliphCom's Vice President of Operations, who may testify about the design, development, and production of the accused products, including testimony about the algorithms, sensors, and hardware used in the accused products;

- **Travis Bogard**, AliphCom's Vice President of Product Management and Strategy, who may testify about the circumstances which led AliphCom to develop its accused products and services and about the design, development, production, sales, and marketing of the accused products and services;

- **Jeremiah Robison**, AliphCom's Vice President of Software, who may testify about non-infringement of the Patents-in-Suit by the accused products and how the accused products operate, including testimony about the underlying technology of the accused products and the algorithms used in the accused products; and

- **David Merrenbach**, AliphCom's Chief Financial Officer, who may testify about sales, revenues, costs, and profits associated with the accused products. (Luna Decl., APP. 230, ¶ 4.)

In addition to these foreseeable witnesses, the vast majority of AliphCom's personnel responsible for the research, design, development, production, marketing, and sale of the AliphCom accused products and services reside and work in or near the Northern District of California. (Luna Decl., APP. 230–31, ¶ 5.) AliphCom is not aware of any potential witnesses with relevant knowledge related to its accused products or services located in this District. (*Id.* at APP. 231–32, ¶ 9.)

Of the foreseeable third-party witnesses in this case, a substantial majority appear to reside in or near the Northern District of California.  This group, described above, includes (1) two individuals who appear to live or work in the Northern District of California and who may testify about some of the underlying technology used in AliphCom's accused products; (2) three individuals who appear to live or work in the Northern District of California and who may testify about potentially invalidating prior art; and (3) three individuals who appear to live in Southern California and who may testify about potentially invalidating prior art.

Additional foreseeable witnesses reside outside of the Northern District of Texas.  For example, the Patents-in-Suit only share two common co-inventors, both of whom are noted as residing outside the Northern District of Texas: Michael L. Lehrman (who is also iLife's CEO and a director of iLife) of Washington, D.C. and Michael E. Halleck of Longmont or Northglenn, Colorado.  (*See* Stiegler Decl., APP. 1, 4–5, ¶¶ 2, 15–21 (citing Exs. 1, 14–20, APP. 17, 114–29).)  A third co-inventor named on several of the Patents-in-Suit is also noted as residing outside the Northern District of Texas: Alan R. Owens of Longmont, Colorado.  (*See id.* at APP. 4–5, ¶¶ 16–21 (citing Exs. 15–20, APP. 116–29).)  A final co-inventor named on some of the Patents-in-Suit is noted as residing in the Northern District of Texas: Edward L. Massman of Dallas, Texas.  (*See id.*)

Here, the distance between this District and the Northern District of California is approximately 1,750 miles, which is approximately the same distance as between this District and AliphCom's headquarters in San Francisco, California.  (*See id.* at APP. 9, ¶¶ 36–37 (citing Exs. 35–36, APP. 198–201).)  In contrast, the distance between AliphCom's headquarters and the San Francisco Division of the Northern District of California is less than two miles.  (*Id.* at APP. 9, ¶ 37 (citing Ex. 36, 201).)  If this case remains in this District, multiple AliphCom executives and employees and third-party witnesses would be required to travel a substantial

distance for trial to a location where they have no office, residence, operations, or community. This travel would disrupt business operations for AliphCom and its third-party witnesses and would burden AliphCom and third-party witnesses with disproportionate travel and lodging costs. In comparison, AliphCom's party and third-party witnesses would incur only slight costs to attend trial in the Northern District of California because of the close proximity of that court to the work or residence of these witnesses. To avoid unnecessary costs and burdens to AliphCom's witnesses, this Court should transfer this action to the Northern District of California.

In contrast, many of iLife's witnesses will not suffer similar burdens if the case is transferred because they already must travel a significant distance to testify in this District. For example, as a resident of the Washington D.C. area, Michael L. Lehrman—a director of iLife, iLife's CEO, and the lead inventor for all of the Patents-in-Suit—must travel at least 1,300 miles to testify at trial in this District. (*See id.* at APP. 9, ¶ 38 (citing Ex. 37, APP. 203).) Because Mr. Lehrman will be required to travel a significant distance no matter where testifies, his cost of attendance at trial should not weigh heavily in this analysis. Similarly, the named inventors noted as residing in Longmont or Northglenn, Colorado already have to travel approximately 800 miles to testify at trial in this District. (*See id.* at APP. 9–10, ¶ 39 (citing Ex. 38, APP. 205).) Based on this already existing significant travel distance, their cost of attendance also should not weigh heavily in this analysis, especially since a direct flight from Denver to San Francisco is only fifty minutes longer than a direct flight from Denver to Dallas. (*See id.* at APP. 9–10, ¶¶ 39–40 (citing Exs. 38–39, APP. 204–07).) *See also Volkswagen I*, 371 F.3d at 204 n.3 (noting that the existence of direct flights can affect the analysis of travel time).

iLife may point to a purported office in Bedford, Texas, but the sole purpose of that office appears to be iLife's enforcement of the Patents-in-Suit. Furthermore, such ephemeral,

litigation-driven ties to a venue carry no weight in the transfer analysis.  *E.g.*, *In re Microsoft*, 630 F.3d at 1364–65 (giving no weight to a company's ties to Texas when the company incorporated under the laws of Texas in anticipation of litigation and staffed no employees in its offices); *In re Zimmer*, 609 F.3d at 1381 (giving no weight to the location of a company's unstaffed offices established in Texas in anticipation of litigation because the company's presence in the venue appeared to be "recent, ephemeral, and an artifact of litigation").

iLife did not even exist in this District until two months before it began an initial litigation campaign on the Patents-in-Suit, and the Bedford office appears to have opened around that same time.  (*See* Stiegler Decl., APP. 1–4, ¶¶ 2, 11–12, 14 (citing Exs. 1, 8–9, 13, APP. 12–22, 88–91, 111–13).)  Moreover, the phone number listed for the Bedford office appears to be registered to iLife's litigation counsel.  (*See id.* at APP. 3–4, ¶¶ 11–13 (citing Exs. 8–12, APP. 88–95, 109).)  AliphCom is also not aware of any iLife witnesses who work at the Bedford office (or elsewhere in this District).  (*Id.* at APP. 9, ¶ 35.)  In short, iLife's contacts in this District appear to be little more than an "artifact of litigation" and have no bearing on the transfer analysis.  *See In re Microsoft*, 630 F.3d at 1364 (stating it is a "fallacious assumption" that a "court must honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient").

Because travel to this District would impose significant hardships and costs on party and third-party witnesses (a majority of whom reside or work in or near the Northern District of California), this third private interest factor weighs heavily in favor of transfer.

### d.   Practical Issues Encouraging Expedient Adjudication Favor Transfer

Even though the other private interest factors favor transfer, iLife might argue that judicial efficiency justifies retaining venue in this District because iLife has brought other suits

before this Court involving some or all of the Patents-in-Suit.  (*See* Pl.'s Notice of Related Cases, ECF No. 6.)  But this argument should not override the convenience factors favoring transfer, especially when defendants move to transfer early in the litigation.  *See, e.g.*, *In re Zimmer*, 609 F.3d at 1382 (the existence of other early-stage suits with no common defendants in the same venue does not "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor").  In fact, the "America Invents Act contemplates that each patent case will be treated separately."  *LT Tech*, 2013 WL 6181983, at *5; *see also GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (permitting the existence of separately-filed patent infringement cases to sway a venue transfer analysis would allow plaintiffs to "manipulate venue by serially filing cases within a single district" and "would undermine the principals underpinning transfer law and the . . . America Invents Act").

This case remains in its early stages: discovery has just begun; the parties have not exchanged initial disclosures or contentions; and claim construction has not occurred.  As a result, a transfer at this early stage will not prejudice iLife.  Rather, transfer to the Northern District of California would be particularly efficient in this case because of the four other pending cases in which iLife has asserted the Patents-in-Suit, three of them involve defendants with substantial connections to the San Francisco Bay Area.  Fitbit, Inc. (the defendant in Case No. 13-cv-4778) is headquartered in San Francisco, and its executives and founders work and reside in the Northern District of California.  (Stiegler Decl., APP. 10, ¶¶ 42–44 (citing Ex. 41, APP. 210–15).)  Although headquartered in Pittsburgh, Pennsylvania, BodyMedia, Inc. (the defendant in Case No. 13-cv-4776) was acquired by AliphCom in April 2013, is represented by the same counsel as AliphCom, and has at least one officer who resides and works in the Northern District of California.  (*Id.* at APP. 10, ¶¶ 45–47 (citing Ex. 42, APP. 218).)  In

addition, Nintendo of America (the defendant in case No. 13-cv-4987) has offices in the Northern District of California and is headquartered in the Seattle area—a two-hour flight from San Francisco.[4]  (*See id.* at APP. 10–11, ¶¶ 48–51 (citing Exs. 43–45, APP. 220–28).)  To AliphCom's knowledge, none of these defendants have any meaningful connections to this District.  (*Id.* at APP. 11, ¶ 52.)

Because this action is in the early stages of litigation and a majority of related pending cases have significant ties to the Northern District of California, judicial economy warrants transfer to the vastly more convenient venue in the Northern District of California where the court there can efficiently coordinate the parallel proceedings of the pending actions.

## 2.    The Public Interest Factors Favor Transfer

Although the first, third, and fourth private interest factors are neutral as discussed below, the second public interest factor involving a forum's local interest weighs heavily in favor of transfer to the Northern District of California.

### a.    The Northern District of California Has a Greater Interest than this District in the Outcome of this Case

Courts should disregard local interests that "could apply virtually to any judicial district or division in the United States" in favor of particularized local interests relating to the "controversies and events giving rise to a case."  *Volkswagen II*, 545 F.3d at 318.  Accordingly, the Fifth Circuit and the Federal Circuit have "unequivocally rejected" weighing this factor in favor of retaining venue when a plaintiff's only connection to a venue is based on sales of an accused product in that venue.  *E.g.*, *In re Nintendo*, 598 F.3d at 1198 ("The Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a

---

[4] The fourth active case involving the Patents-in-Suit was brought against Under Armour and appears to be based in Baltimore, Maryland.  *See* Compl., *iLife Techs., Inc. v. Under Armour, Inc.*, No. 13-cv-4781 (N.D. Tex. Dec. 6, 2013), ECF No. 1.

substantial interest in adjudicating a case locally because some allegedly infringing products found their way into the Texas market.  Indeed, this court has stressed the same point.  If the products were sold throughout the United States, . . . then the citizens of the venue chosen by the plaintiff have no more or less of a meaningful connection to the case than any other venue." (citing *Volkswagen II*, 545 F.3d at 317–18 and *In re TS Tech*, 551 F.3d at 1321) (internal quotations omitted)).

Instead, in a patent infringement action, "[t]he preferred forum is that which is the center of gravity of the accused activity."  *Paragon Indus.*, 2008 WL 3890495, at *3 (quoting *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. Civ. A. 3:02-CV-2538, 2003 WL 21251684, at *3 (N.D. Tex. May 23, 2003).  "Indeed, the trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production."  *Id.* (internal quotations and citations omitted); *see also LT Tech*, 2013 WL 6181983, at *7 (finding that the Northern District of California had a "substantially greater local interest" than the Northern District of Texas when the accused infringer's products were designed, developed, marketed, and supported "by a company headquartered in and with a significant number of executives and employees based in California"); *AT & T Intellectual Property I, L.P. v. Airbiquity Inc.*, Civil Action No. 3:08-cv-1637-M, 2009 WL 774350, at *6 (N.D. Tex. Mar. 24, 2009) (finding that the transferee venue had a greater local interest when the accused infringer was based in the transferee district and "most, if not all of its witnesses, evidence, and business operations are there").

To determine the center of gravity of the accused activity, courts consider the location of an accused product's development, testing, research, and production.  *Minka*, 2003 WL 21251684, at *3.  They also consider the location where marketing and sales decisions occurred. *Id.*  Accordingly, "[t]he location of the alleged infringer's principal place of business . . . is often

the **critical and controlling consideration** in adjudicating a motion to transfer venue." *Id.* (emphasis added).

As shown above, AliphCom's principal place of business is in San Francisco, California, which is in the Northern District of California.  (Luna Decl., APP. 229, ¶ 2.)  The vast majority of AliphCom's accused products and services were researched, designed, developed, and tested within the Northern District of California.  (*Id.* at APP. 229, 231, ¶¶ 2–3, 7.)  All marketing and sales decisions related to the accused products and services occurred at AliphCom's headquarters in San Francisco.  (*Id.* at APP. 231, ¶ 6.)  The vast majority of AliphCom's business documents and records relating to the research, design, development, marketing strategy, pricing, and product revenue for AliphCom's accused products and services are located in San Francisco. (*Id.* at APP. 231, ¶ 8.)   Similarly, all of AliphCom's executives and a vast majority of its employees work and reside in or near the Northern District of California.  (*See id.* at APP. 230– 31, ¶¶ 4–5.)

In contrast, as described above, iLife's few ties to this District represent the "recent, ephemeral, and [] artifact of litigation" connections that the Federal Circuit has rejected as proper bases for declining transfer.  *In re Zimmer*, 609 F.3d at 1381.  Moreover, iLife's artificial connections are not entitled to any weight in the transfer analysis because they were "made in anticipation of litigation and for the likely purpose of making [this District] appear convenient." *In re Microsoft*, 630 F.3d at 1364.

Because the accused products and services were designed, developed, marketed, and supported by a company headquartered in and with a significant number of executives and employees based in San Francisco, the center of gravity in this case is located in the Northern District of California.  As a result, the Northern District of California has a substantially greater local interest than this District, and this second public interest factor heavily favors transfer.

### b.  The Remaining Public Interest Factors Are Neutral

The first public interest factor—administrative issues related to congestion—is neutral. Although the speed with which a case can be resolved is a factor in the transfer analysis, the speculative nature of this factor generally does not weigh in favor of or against transfer.  *E.g.*, *LT Tech*, 2013 WL 6181983, at *6 (finding this factor neutral when due to similarities of statistics for districts and because "patent cases have special rules and procedures that make general statistics less useful to this analysis"); *see also Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 702 (E.D. Tex. 2011) ("This factor appears to be the most speculative, and this factor alone should not outweigh other factors.").

The third and fourth public interest factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws, respectively—are neutral because this matter arises entirely under patent law.  *LT Tech*, 2013 WL 6181983, at *7–8.  As a result, there is no foreseeable conflict of law, and both courts are equally capable of applying the applicable law.  *Id.*

## V.   CONCLUSION

The totality of the public and private factors strongly favors transfer because a majority of the witnesses and documents related to the alleged acts of infringement are located in or near the Northern District of California.  As a result, for the convenience of the parties and witnesses and to promote the interests of justice, AliphCom respectfully requests the Court to transfer this case to the San Francisco Division of the Northern District of California.

Dated: March 12, 2014                    Respectfully submitted,


                                         */s/   Thomas C. Wright*_____
                                         Thomas C. Wright
                                         Texas State Bar No. 24028146
                                         Alex J. Whitman
                                         Texas State Bar No. 24081210
                                         3500 Maple Avenue, Suite 900
                                         Dallas, TX 75219
                                         Telephone: (214) 752-8600
                                         Fax: (214) 752-8600
                                         twright@rosewalker.com
                                         awhitman@rosewalker.com

                                         Of Counsel:

                                         Erik B. Milch (*Pro Hac Vice Application Filed*)
                                         Philip Morton (*Pro Hac Vice Application Filed*)
                                         Cooley LLP
                                         11951 Freedom Drive
                                         Suite 1600
                                         Reston, VA 20190-5656
                                         (703) 456-8000
                                         emilch@cooley.com
                                         pmorton@cooley.com

                                         Anthony M. Stiegler (*Pro Hac Vice Application
                                         Filed*)
                                         Brandon Seal (*Pro Hac Vice Application Filed*)
                                         Cooley LLP
                                         4401 Eastgate Mall
                                         San Diego, CA 92121-1909
                                         (858) 550-6000
                                         astiegler@cooley.com
                                         bseal@cooley.com

                                         Rose Whelan (*Pro Hac Vice Application Filed*)
                                         Cooley LLP
                                         1299 Pennsylvania Avenue, NW
                                         Suite 700
                                         Washington, DC 20005
                                         (202) 728-7070
                                         rwhelan@cooley.com

                                         Attorneys for Defendant
                                         *AliphCom d/b/a Jawbone*

26

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for Defendant AliphCom d/b/a Jawbone has complied with the meet and confer requirement in Local Civil Rule 7.1(a). This motion is opposed. The conference required by Local Civil Rule 7.1(a) was conducted on March 10, 2014 by telephone. Alex Whitman participated for AliphCom, and Wallace Dunwoody participated for iLife Technologies, Inc. An agreement was not reached because the parties have opposing views on the relief requested by this motion. The discussions have conclusively resulted in an impasse. As a result, this motion is presented to the Court as opposed for decision.

*/s/ Alex J. Whitman*
Alex J. Whitman


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **DEFENDANT ALIPHCOM'S MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA** was served via CM/ECF upon all counsel of record on March 12, 2014.

*/s/ Thomas C. Wright*
Thomas C. Wright