UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILIFE TECHNOLOGIES INC,<br><br>       Plaintiff,<br><br>    v.<br><br>ALIPHCOM,<br><br>       Defendant. | Case No. 14-cv-03345-WHO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 89 |

In response to plaintiff iLife Technologies Inc.'s ("iLife") First Amended Complaint ("FAC") for patent infringement, defendant AliphCom brings a counterclaim for inequitable conduct on two grounds, alleging that the prosecuting attorney and the inventor of iLife's patents each deliberately failed to disclose known material information to the U.S. Patent and Trademark Office ("PTO") that would have resulted in the patents' invalidity. iLife moves to dismiss the counterclaim, claiming that AliphCom failed to meet the heightened pleading standard for inequitable conduct.

With respect to inventor Michael Lehrman, the counterclaim satisfies Rule 9(b) given Lehrman's email on February 24, 2003 that he knew "how to take down our fall detection patents" and invalidate them, and the other assertions on information and belief that Lehrman withheld knowledge of how to do so. The counterclaim also provides detailed, plausible allegations that both Lehrman and attorney William A. Munck knew of prior art that invalidated European patent applications that were similar to the U.S. patents at issue, but failed to disclose it to the PTO. Accordingly, I DENY the motion to dismiss.

## BACKGROUND

iLife owns by assignment six patents that are at issue in this case, referred to as the "Asserted Patents": U.S. Patent Nos. 6,307,481 ("'481 patent"), 6,703,939 ("'939 patent"),

6,864,796 ("'796 patent"), 7,095,331 ("'331 patent"), 7,145,461 ("'461 patent"), and 7,479,890 ("'890 patent"). FAC ¶¶ 8-9 (Dkt. No. 10). These patents detect, evaluate, and/or analyze body movements. *Id.* ¶ 10. The Asserted Patents were issued between 2001 and 2009. *Id.* ¶ 8. The '331 patent was filed on March 9, 2004 and issued on August 22, 2006. Counterclaim ¶ 89 (Dkt. No. 82). The '461 patent was filed on January 25, 2002 and issued on December 5, 2006. *Id.* ¶ 87. The '890 patent was filed on December 4, 2006 and issued on January 20, 2009. *Id.* ¶ 85.

AliphCom makes and sells products that allegedly infringe the Asserted Patents. FAC ¶ 10. In 2013, iLife brought a claim against AliphCom for direct and indirect infringement of the Asserted Patents. After some initial discovery, AliphCom filed an Amended Answer and Counterclaim in response to the FAC, asserting a counterclaim for inequitable conduct on two bases. First, AliphCom contended that the inventor of the Asserted Patents, Michael Lehrman, possessed material information relating to the patentability of the Asserted Patents "at least as of February 24, 2003." *Id.* ¶ 55. According to AliphCom, on that date Lehrman sent an email that stated: "I'm not going to go into it here, but I know how to take down our fall detection patents, both two axis and three axis, and a really determined effort to invalidate the patents, if performed skillfully could succeed." *Id.* ¶ 51. The patents referred to are the Asserted Patents. *Id.* ¶¶ 52-54. The counterclaim asserted that Lehrman did not disclose this information to the PTO, although he signed an oath acknowledging his duty to disclose all known material information relating to the patents. *Id.* ¶ 57.

Second, AliphCom claimed that both Lehrman and prosecuting attorney William A. Munck failed to disclose information about prior art during the prosecution of the '890, '331, and '461 patents, and that but for this nondisclosure the PTO would not have issued the patents. *Id.* ¶ 64. This alleged nondisclosure involves two patents applications filed by iLife before the European Patent Office ("EPO"): European Patent Application Nos. 01987107.8 ("'107 patent application") and 02721362.8 ("'362.8 patent application"). *Id.* ¶ 67. The European patent applications were prosecuted by the firm Carpmaels & Ransford ("Carpmaels"), although the counterclaim alleges that Munck and his firm, Davis Munck, assisted Carpmaels with the prosecution. *Id.* ¶ 72. Lehrman was allegedly the named inventor on both patent applications. *Id.*

2

¶ 75.

According to the counterclaim, the European patents applications "disclosed and claimed substantially similar subject matter as that disclosed and claimed in the Asserted Patents." *Id.* ¶ 67.  The counterclaim identifies three prior art references that were material to the patentability of the European patent applications and that were thus also relevant to the Asserted Patents.  These references are U.S. patent No. 6,160,478 ("'478 patent"), European Patent Application No. 0877346 ("'346 patent"), and British Patent Application Publication GB2323196 ("'196 patent"). *Id.* ¶ 81.  According to the counterclaim, each of these references cites sensation of "dynamic and static acceleration." *Id.* ¶¶ 97, 130, 168.  The "dynamic and static acceleration" feature is part of the limitations found in claim 11 of the '331 patent, claim 1 of the '461 patent, and claim 11 of the '890 patent. *Id.* ¶ 96.

The counterclaim lists a number of findings by the EPO that were material to the European patent applications and that were allegedly communicated to Carpmaels.  Significantly, on several occasions the EPO notified Carpmaels of the relevance of the '478, '374, and '196 patents to the '362.8 or '107.8 patent applications.  For example, during the prosecution of the '362.8 patent application, the EPO identified the '478 patent in a Supplementary European Search Report as an "X" reference. *Id.* ¶ 100.  This meant that the '478 patent was "particularly relevant if taken alone" to the pending '362.8 patent application. *Id.*  The EPO sent this search report to Carpmaels, asking the firm if iLife wished to proceed with the '362.8 application. *Id.* ¶ 101.  Shortly thereafter, Carpmaels confirmed that iLife wished to proceed. *Id.* ¶ 102.  The counterclaim states that Carpmaels would have discussed this search report with Munck, who was iLife's prosecution counsel, and with Lehrman, who had claimed on February 11, 2003 that he was "responsible" for the patents. *Id.*  It claims that neither Munck nor Lehrman submitted the search report to the PTO. *Id.* ¶ 103.

On June 30, 2006, the EPO found that '362.8 patent application was invalid in light of references that included the '478 patent. *Id.* ¶ 104.  This finding and explanation was mailed to Carpmaels, which "would have shared the results of the search report with its client iLife," including Munck and Lehrman. *Id.* ¶¶ 105-106.  This was also not submitted to the PTO. *Id.* ¶

3

108. According to the counterclaim, the EPO made the same finding in 2007. *Id.* ¶ 109. Again, AliphCom alleges that the communication was relayed to Carpmaels, and then to iLife, Munck, and Lehrman. *Id.* ¶¶ 110-111. Again, no one submitted the information to the PTO. *Id.* ¶ 113. The counterclaim repeats all these allegations relating to yet another "subsequent communication accompanying a Summons to attend oral proceedings" related to the '362.8 patent application in 2008, and another in 2014, after which the European Patent Office Board of Appeal affirmed the decision of the EPO in view of prior art, including the '478 patent. *Id.* ¶¶ 114-124.

A similar pattern of conduct is alleged with respect to the '196 patent, which ultimately invalidated certain claims of the '362.8 patent application, and with respect to the '346 patent, which ultimately invalidated certain claims of the '107.8 and '362.8 patent applications. *See id.* ¶¶ 126-163, 164-185. The counterclaim provides that each time the EPO informed Carpmaels of the relevant prior art, Carpmaels communicated the findings to iLife, Munck, and Lehrman. Each time, the EPO requested that Carpmaels confirm whether iLife wished to proceed, and each time Carpmaels answered affirmatively. The counterclaim alleges on information and belief that on all of these occasions Carpmaels conferred with Munck and his law firm in the United States. The EPO ultimately found that certain claims of both of iLife's European patent applications were invalidated by prior art – namely, the '478, '196, and '374 patents. In each instance, the results were communicated to Carpmaels, and allegedly also to Munck and Lehrman.

All of this purportedly occurred during or before the prosecution of the '331, '461, and '890 patents. *Id.* ¶¶ 121-122, 144, 158-159, 173. The EPO communications to iLife occurred between 2006 and 2014 regarding the '478 reference, between 2004 and 2006 regarding the '346 reference, and in 2006 regarding the '196 reference. *See id.* ¶¶ 100-178. In each instance, the counterclaim states that the PTO would have rejected at least claim 11 of the '331 patent, claim 1 of the '461 patent, and/or claim 11 of the '890 patent had it known of the '478, '346, and '196 patents. *Id.* ¶¶ 112, 156, 180. The prior art in these patents consisted of the material feature of "dynamic and static acceleration." *Id.* ¶¶ 97, 130, 168. According to AliphCom, Munck and Lehrman did not disclose any of the EPO reports or findings to the PTO during the prosecution of the '331, '461, and '890 patents. *Id.* ¶¶ 97, 133, 171.

4

1      Based on these facts, the counterclaim asserts "on information and belief" that Munck and Lehrman were aware of the EPO communications, which "reject[ed] claims similar to those claimed in the '890, '331, and '461 Patents based in part on the ['478, '346, and '196 patents'] disclosure of sensing both static and dynamic acceleration," and were aware that "[iLife] had secured allowance of the parent '481 Patent based on the representation that the prior art lacked references disclosing sensing static and dynamic acceleration." *Id.* ¶¶ 122, 159-160, 183. AliphCom also contends that Munck and Lehrman knew that the '478, '346, and '196 patents and the EPO communications were "highly material to the patentability of at least claim 11 of the '890 Patent, claim 11 of the '331 Patent, and claim 1 of the '461 Patent." *Id.* ¶¶ 123-124, 161-162, 184-185. The counterclaim also states that Lehrman's specific intent to withhold the information relating to the EPO patent prosecutions is further evidenced by his February 24, 2003 email. *Id.* ¶¶ 125, 163, 186.

iLife brings a motion to dismiss the counterclaim for failure to state a claim, arguing that AliphCom failed to meet the heightened pleading standard for fraud set forth in Federal Rule of Civil Procedure 9(b).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim shall be granted where the pleading party fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing these motions, courts view all of the pleaded facts as true and in the light most favorable to the non-moving party. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). "Where a complaint pleads facts that are merely consistent with a [moving party]'s liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). The court is not obligated to accept as true unreasonable inferences, conclusory statements, or allegations that "contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Sciences. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). For allegations of fraud, "a party must state with particularity the circumstances constituting [the] fraud," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

5

The Federal Circuit set forth the test for pleading an inequitable conduct claim in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). To satisfy the heightened pleading standard of Rule 9(b), "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. Next, "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328. A counterclaim must allege "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* at 1327.[1]

## DISCUSSION

According to AliphCom, both Lehrman and Munck failed to disclose material information to the PTO. First, the counterclaim alleges that Lehrman did not disclose information that he knew could "take down" the asserted patents. Counterclaim ¶¶ 50-60. Second, it claims that during the prosecution of the '331, '461, and '890 patents, Munck and Lehrman both intentionally failed to disclose material prior art references that invalidated substantially similar claims in iLife's European patent applications. *Id.* ¶¶ 61-80.

---

[1] I recognize that there is currently a dispute among courts as to the pleading requirements for an inequitable conduct counterclaim. Some courts have found that *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011), which tightened the standards for proving inequitable conduct at summary judgment, applies to pleadings as well. *See*, e.g., *VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co.*, No. CIV. 11-00288 ACK, 2011 WL 6820122, at *5 (D. Haw. Dec. 27, 2011) ("a party must make an initial showing from which it may be plausibly inferred that: (1) the individual knew of the information not disclosed; (2) the information not disclosed was but-for material to the prosecution of the patent; and (3) the intent to deceive is the single most likely explanation for the non-disclosure."). However, other courts, including courts in this district, have declined to apply the *Therasense* standard at the motion to dismiss stage. *See Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 900 (N.D. Cal. 2011) ("It would be inappropriate at the motion to dismiss stage to hold that DrugLogic cannot plead inequitable conduct based on a case that addressed the heightened standards not for pleading but for proving the elements of such a claim."); *Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, No. C 11-04100 WHA, 2012 WL 1094324, at *3 (N.D. Cal. Mar. 29, 2012) (applying *Exergen* standard and not *Therasense* standard); *Nalco Co. v. Turner Designs, Inc.*, No. 13-CV-02727 NC, 2014 WL 645365, at *3 (N.D. Cal. Feb. 19, 2014) (same). I decline to impose a standard that requires more than that set forth in *Exergen*, and will not apply *Therasense* at this stage of the proceedings.

## I. PARTICULARITY OF THE FACTS

### A. Specific "who"

AliphCom has adequately pleaded the "who" involved in the inequitable conduct. The counterclaim refers to two specific individuals: inventor Michael Lehrman and prosecuting attorney William A. Munck. iLife does not argue that AliphCom failed to meet the "who" requirement of *Exergen*, and I deem it to be met. *See Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2011 WL 1044396, at *4 (N.D. Cal. Mar. 22, 2011) (finding the "who" to be adequately pled; issue of whether that person knew of the information should be resolved under the scienter analysis of an inequitable conduct claim).

### B. Specific "what" and "where"

To properly plead the "what" and "where" of an alleged material omission, a pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *See Exergen,* 575 F.3d at 1329. In doing so, "[[p]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Id.* at 1330.

For its first basis for inequitable conduct, the counterclaim relies solely on Lehrman's 2003 email. It pleads "on information and belief" that Lehrman "possessed information he considered material to the patentability of the claims of the Asserted Patents." Counterclaim ¶¶ 52-56. It alleges that as of 2001, and at least as of 2003, Lehrman knew of this information but failed to disclose it to the PTO. *Id.* ¶¶ 55-57. The counterclaim fails to specify what information Lehrman withheld from the PTO, as well as to which claims or limitations in the patents the information was relevant.

The information alluded to in Lehrman's email is exclusively in the control of the defendants. In pointing to the 2003 email, AliphCom identified the information on which it relies, and provided a very plausible reason for its belief that Lehrman had information that was material to the patentability of the Asserted Patents. AliphCom cannot reasonably provide more information without conducting discovery, which is not necessary prior to a motion to dismiss.

7

1  Because Lehrman's email furnishes strong evidence of a knowing and material omission from the
2  PTO, and is exclusively within the defendants' control, I find that AliphCom satisfied the "what"
3  and "where" requirements for its first basis for inequitable conduct.

4      The counterclaim also adequately pleads the "what" and "where" of the inequitable
5  conduct with respect to the EPO proceedings. AliphCom alleges that the withheld material
6  information that Munck and Lehrman learned from the EPO was relevant to claim 11 of the '331
7  patent, claim 1 of the '461 patent, and claim 11 of the '890 patent. *See id.* ¶ 96. It also identifies
8  the allegedly withheld material information – the '478, '346, and '196 patents. *Id.* ¶ 97. Exhibits
9  A, B, and C to the Amended Answer and Counterclaim provide a detailed comparison of the
10 relevant prior art limitations in the '478, '346, and '196 patents and the corresponding claims in
11 the Asserted Patents. *See* Dkt. No. 81-5, 81-6, 81-7. This is sufficient to satisfy the "what" and
12 "where" of an inequitable conduct claim under *Exergen*. *See Breville Pty Ltd. v. Storebound LLC*,
13 No. 12-CV-01783-JST, 2013 WL 1758742, at *5 (N.D. Cal. Apr. 24, 2013) (finding the "what"
14 and "where" satisfied by allegations that plaintiff failed to inform the PTO of related EPO reports
15 of prior art relating to a particular claim limitation).

### C. Specific "why" and "how"

Under *Exergen*, AliphCom must "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record. Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims.' *Exergen*, 575 F.3d at 1329-30. For the reasons stated above, AliphCom's pleadings "on information and belief" regarding Lehrman's email are sufficiently well-pleaded to survive a motion to dismiss, notwithstanding the counterclaim's failure to identify the exact information that Lehrman withheld.

Turning to the second basis for inequitable conduct, Exhibits A, B, and C to the Amended Answer and Counterclaim set forth the elements of the prior art learned from the EPO that are supposedly absent from the information of record. In addition, the counterclaim provides information as to how this prior art is material and not cumulative. It alleges that "[t]hroughout

8

the prosecution of the various applications leading to the '331 Patent, the '461 Patent, and the '890 Patent, the Applicant successfully argued in response to rejections that the prior art failed to disclose systems that measure both dynamic and static acceleration." Counterclaim ¶ 93. It continues:

> 94. For example, claims 1-24 of the parent '481 Patent were allowed after the Applicant argued on appeal in a brief submitted on March 13, 2001 that none of the cited references "teach[] or suggest[] sensing both dynamic and static accelerative phenomena, taken alone or in combination."
> 95. Additionally, in allowing the '461 Patent, the examiner stated that "no prior art reference utilizes a system comprising a processor that is associable with a sensor for sensing dynamic and static accelerative phenomena of said body, said processor operable to process said sensed dynamic and static accelerative phenomena as a function of at least one accelerative event characteristic and an environmental representation to thereby determine whether said evaluated body activity is within environmental tolerance."
> 96. Claim 11 of the '331 Patent, claim 1 of the '461 Patent, and claim 11 of the '890 Patent all recite the feature of sensing both "dynamic and static" acceleration.
> 97. No prior art rejections were made in the prosecution of the '331 Patent, the '461 Patent or the '890 Patent. The Examiner was apparently unaware that numerous prior art references, including the '478 Patent disclose all elements of the purported inventions claimed in the '331, '461, and '890 Patent, including for example sensing "dynamic and static" acceleration.

*Id.* ¶¶ 94-97. The counterclaim not only pleads that the withheld information was not cumulative; it indicates that iLife took a contrary position before the PTO. Moreover, it alleges that the prior art references resulted in the European patent applications' denial before the EPO, and that the PTO did not know of this or any related prior art when it issued the '331, '461, and '890 patents. This supports an inference that had the PTO known of this information, it would not have issued the patents.

iLife argues that the "references cited by the European examiner were not material." Mot. at 9. It also emphasizes that the '107.8 patent application was amended to include patentable limitations also contained in the '796 patent and all previously issued Asserted Patents. *Id.* Further, it argues that the '478 and '196 references were not material because "they would have only qualified as 102(a) prior art that iLife could have sworn behind in the U.S. prosecution." *Id.* iLife's argument fails to consider that AliphCom alleged that the references cited by the EPO were

9

1  material to the '331, '461, and '890 patents, which were issued after the '796 patent. *See* FAC ¶ 8.
2  It also does not describe how the prior art references would have qualified as 102(a) prior art. At
3  any rate, an analysis of the European references' materiality as prior art is not appropriate at this
4  stage. *See Breville*, 2013 WL 1758742, at *6 ("The Court does not read *Exergen* as requiring a
5  court to determine, on the face of the pleadings, whether the allegedly missing material is in fact
6  material and not cumulative."). Therefore I find that AliphCom has alleged sufficient facts to
7  plead inequitable conduct relating to the EPO prosecutions under *Exergen*.

**II. SCIENTER**

Under *Exergen*, AliphCom must plead sufficient facts from which a court may reasonably infer that Munck and Lehrman (i) knew of the withheld material information; and (ii) withheld this information with a specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1328-29. When pleading on "information and belief," a party must identify the information on which it relies, plausible reasons for its "belief," and circumstances which suggest a deliberate decision to withhold a known material reference. *Id.* at 1331. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n. 5.

Lehrman's 2003 email provides a sufficient basis to conclude that he deliberately withheld material references from the PTO. In the email, Lehrman clearly suggested that he knew how to invalidate the patents. It is also reasonable to infer that Lehrman threatened to expose the patents to invalidation if he did not receive the compensation he sought. Notwithstanding Lehrman's knowledge, he swore to the PTO that he did not know of any information that could invalidate the Asserted Patents. In addition, the counterclaim pleads Lehrman's specific intent, about which the defendant has exclusive knowledge, "on information and belief." Counterclaim ¶ 59. The counterclaim supports a plausible inference that Lehrman intended to deceive the PTO.

With respect to the EPO proceedings, the counterclaim pleads both the knowledge and intent elements of inequitable conduct circumstantially, and often "on information and belief." It

1  alleges that: Munck was the agent responsible for the PCT applications[2] that led to the European

2  patent applications; Munck was sent a communication that the '107.8 patent application had

3  entered the national phase of prosecution before the EPO; and Munck's law firm assisted

4  Carpmaels in the EPO prosecution (based in part upon the fact that Munck paid an invoice to

5  Carpmaels in 2006). *Id.* ¶¶ 68-72. In addition, the counterclaim asserts that Munck submitted an

6  Information Disclosure Statement to the PTO related to the International Search Report for the

7  '362.8 PCT application in his prosecution of a separate patent not at issue in this case, but never

8  submitted one in the prosecution of the Asserted Patents. *Id.* ¶ 71.

9  The counterclaim identifies three prior art references that are relevant to the '331, '461,

10 and '890 patents: the '478 patent, the '346 patent, and the '196 patent. *Id.* ¶ 81. It pleads that the

11 EPO found these references to be relevant to certain claims of the European patent applications.

12 *Id.* According to the counterclaim, the EPO found that the '478 patent precluded patentability of

13 claims in the '362.8 application, the '346 patent precluded patentability of claims in the '107.8 and

14 '362.8 patent applications, and the '196 patent application precluded the patentability of claims in

15 the '362.8 application. *Id.* ¶¶ 104, 138, 153, 177. For example, in explaining how the '346 patent

16 constituted prior art to the '107.8 patent application, the EPO stated that the '346 patent "discloses

17 analysis of both [dynamic and static acceleration]." *Id.* ¶ 138.

18 Accordingly, the counterclaim alleges that the '478, '346, and '196 patents constitute prior

19 art to claim 11 of the '331 patent, claim 1 of the '461 patent, and claim 11 of the '890 patent. It

20 asserts that the EPO's determinations relating to these European patent applications were

21 communicated to Munck, who was monitoring the European prosecutions while simultaneously

22 prosecuting the '331, '461, and '890 patents before the PTO. Taking all of the pleaded facts as

23 true, it is reasonable to infer that Munck was apprised of the developments in the prosecution of

24 the EPO patent applications, including the invalidation of specific claims due to prior art. As he

25 was also the prosecuting attorney responsible for the Asserted Patents, it is also reasonable to infer

---

[2] The PCT, or Patent Cooperation Treaty, allows for international patent filing. Before being prosecuted in individual countries at the national level (or before the EPO), the International Search Authority creates an International Search Report, and the patent application is then published. *See PCT FAQs*, WIPO (Feb. 17, 2015), http://www.wipo.int/pct/en/faqs/faqs.html.

United States District Court
Northern District of California

1  that Munck knew of the EPO references and their materiality to the '331, '461, and '890 patents.

2  Similarly, the pleaded facts support an inference that Lehrman knew of the EPO references
3  and deliberately failed to disclose them to the PTO. The counterclaim states that Lehrman was a
4  named inventor on the European patent applications; that he was sent communications that each
5  European patent had been filed; and that he took an active role in the prosecution of the European
6  patent applications. *Id.* ¶¶ 75-80. In support of this "active role," AliphCom points to an email
7  from Lehrman to Ray Mirza on February 11, 2003, which states that Lehrman was "responsible
8  for the patents" and that iLife should have an insurance policy on him. *Id.* ¶ 78. Viewing all of
9  these facts in the light most favorable to the defendants establishes a probability that Lehrman
10 knew of the EPO references.

11 AliphCom offers the same facts discussed above to circumstantially plead Munck and
12 Lehrman's specific intent to deceive the PTO. It does not provide any other information that
13 Munck specifically intended to deceive the PTO, and includes allegations such as the following:
14 "Mr. Munck and Mr. Lehrman knew that the '478 Patent was highly material to the patentability
15 of at least claim 11 of the '890 Patent, claim 11 of the '331 Patent, and claim 1 of the '461 Patent
16 and failed to disclose this prior art reference with a specific intent to deceive the PTO." *Id.* ¶ 123.

17 The question of whether a party can adequately plead specific intent based upon
18 knowledge of material information is a close question that depends upon the facts of each case.
19 On one hand, "[a] conclusory allegation of specific intent is insufficient" to plead inequitable
20 conduct. *BlackBerry Ltd. v. Typo Products LLC*, No. 14-CV-00023-WHO, 2014 WL 1867009, at
21 *3 (N.D. Cal. May 8, 2014). Moreover, an intent to deceive cannot be inferred solely based upon
22 the failure to disclose known information, even if it is highly material. *See*, e.g., *Paragon*
23 *Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1191 (Fed. Cir. 1993); *Optium Corp. v.*
24 *Emcore Corp.*, 603 F.3d 1313, 1322 (Fed. Cir. 2010); *Pixion, Inc. v. Citrix Sys., Inc.*, No. C 09-
25 03496 SI, 2012 WL 762005, at *7 (N.D. Cal. Mar. 8, 2012); *Human Genome Sciences, Inc. v.*
26 *Genentech, Inc.*, No. 2:11-CV-6519-MRP, 2011 WL 7461786, at *4 (C.D. Cal. Dec. 9, 2011).
27 Thus at the motion to dismiss stage, courts have dismissed inequitable conduct pleadings for
28 failure to allege specific intent even where the nonmoving party properly alleged knowledge of

12

material withheld information. *See Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, No. C 11-04100 WHA, 2012 WL 1094324, at \*4-5 (N.D. Cal. Mar. 29, 2012) (allegation that inventor with knowledge of potentially material information "deliberately withheld this information with a specific intent to deceive the PTO" is insufficient to meet *Exergen* standard); *Aevoe Corp. v. AE Tech. Co., LTD.*, No. 2:12-CV-00053-GMN, 2013 WL 876036, at \*10 (D. Nev. Mar. 7, 2013) ("Defendants must allege facts beyond merely alleging a non-disclosure and concluding from that non-disclosure that Plaintiff must have acted with the specific intent to deceive.").

     At the same time, I recognize that information about specific intent is often uniquely within the opposing party's control, and that a party's "intent, knowledge and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). In situations where a party relies largely on the opposing party's affirmative knowledge of material withheld information, there is a fine line between conclusory allegations and those that give rise to a plausible inference of specific intent to deceive the PTO. *Compare BlackBerry*, 2014 WL 1867009, at \*3, *with Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 2730724, at \*4 (N.D. Cal. June 16, 2014) (specific intent was adequately pleaded where inventor "allegedly knew and withheld material information 'with deceptive intent to claim subject matter conceived by others as his invention'").

     Although in some cases courts have rejected allegations of specific intent where no facts were pleaded beyond those of knowledge, other courts' rulings indicate that at least in some cases, pleadings establishing knowledge of withheld material information can also lead to an inference of specific intent to deceive the PTO. *See Oracle Corp. v. DrugLogic, Inc.*, No. C 11-00910 JCS, 2011 WL 5576267, at \*11 (N.D. Cal. Nov. 16, 2011) (stating that if the defendant "adequately alleged that the patent applicants knew about and withheld certain specific information about the allegedly withheld prior art, then they would also have adequately pled deceptive intent"); *Gardner v. Toyota Motor Corp.*, No. C08-632RAJ, 2010 WL 3730173, at \*4 (W.D. Wash. Sept. 20, 2010) ("if the fact-finder concluded that Dr. Malte's relationship with Mr. Gardner was material, that finding [sic] could infer that Mr. Gardner did not disclose the relationship in order to prevent exposing Dr. Malte's bias").

13

Although this is a close question, I find that the facts pleaded in this case nudge AliphCom's allegations that Munck and Lehrman intended to deceive the PTO from conceivable to plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Munck disclosed the EPO report in his prosecution of another patent before the PTO, but allegedly withheld this same report from the PTO in his prosecution of the '331, '461, and '890 patents. In addition, the facts in the light most favorable to AliphCom establish a clear relationship between the European patent applications and the '331, '461, and '890 patents, as well as Munck and Lehrman's close involvement with each set of prosecutions. All of these circumstances, coupled with Lehrman's emails, permit a reasonable inference of their intent to deceive the PTO regarding the '331, '461, and '890 patents. Therefore, I find that AliphCom adequately pleaded the scienter element of its inequitable conduct counterclaim with respect to Munck and Lehrman.

## III. INFECTIOUS UNENFORCEABILITY

The counterclaim's allegations regarding Munck and Lehrman and their failure to disclose the prior art identified in the EPO proceedings relate only to the '331, '461, and '890 patents. Nonetheless, the counterclaim states that "the '939 and '481 Patents, which are in the same parent family and claim the same priority date as the '890, '331, and '461 Patents, are also unenforceable due to inequitable conduct under the doctrine of infectious unenforceability." Counterclaim ¶ 190. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 809-812 (Fed. Cir. 1990) (unclean hands doctrine applied to patents issuing after the patent that was found to be unenforceable due to inequitable conduct).

As iLife argues in its motion to dismiss, the Federal Circuit holds that inequitable conduct that invalidates a patent does not affect earlier issued patents. *Pharmacia Corp. v. Par Pharm., Inc.*, 417 F.3d 1369, 1375 (Fed. Cir. 2005). However, AliphCom's counterclaim alleges that Lehrman knew of information material to the patentability of the Asserted Patents as early as 2001 – the year that the first Asserted Patent was issued. *See* Counterclaim ¶ 56. If this is proved, then the '939 and '481 patents (and the later-issued Asserted Patents) could be invalid due to Lehrman's inequitable conduct that preceded issuance of the patents. *See* Oppo. at 15. As pleaded, the doctrine of "infectious unconscionability" only applies to later-issued patents, and

14

iLife's argument is inapposite.

## CONCLUSION

For the reasons stated above, I DENY iLife's motion to dismiss. It should answer within 10 days of this Order.

**IT IS SO ORDERED**.

Dated: February 19, 2015



WILLIAM H. ORRICK
United States District Judge